In the Matter of Leo Jiranek, Jr., an Infant.

The People of the State of New York ex rel. Leo Jiranek, Relator, against Alice H. Jiranek Updike et al., Defendants.

In the Matter of Robert H. Jiranek et al., Infants.

The People of the State of New York ex rel. Alice H. Updike, Relator, against Leo Jiranek, Defendant.

Supreme Court, Westchester County, October 30, 1944.

705

*Francis R. Doherty* for Alice H. Updike.

*McClelland & Croake* for Leo Jiranek.

HINKLEY, J. This is the return of a writ of habeas corpus by the father who seeks the custody of the youngest infant son of the parties herein. There is likewise presented a writ and return by the mother for the custody of the oldest two children. After physically separating the parties hereto entered into a separation agreement which was amended and incorporated into a Reno divorce decree. The proceeding has been returned by the Appellate Division for a rehearing. (*Matter of Jiranek,* 267 App. Div. 607.) The higher court attempted to determine the matter by a suggested stipulation of the parties which was not entered into. Conforming to the suggestion of the Appellate Division the only conference had during this hearing and which was between two of the boys and the court in the latter's private office, was made a part of the record.

By the terms of an unquestioned separation agreement entered into between the parties, each one of the boys was permitted to elect with which parent he chose to live. This agreement was made a part of a decree of a Reno, Nevada, divorce to the jurisdiction of which foreign court both parties submitted themselves. So far as the parents are concerned they are legally divorced and according to the law both before and after the decision of *Williams* v. *North Carolina* (317 U. S. 287) full faith and credit must be given to that foreign decree. However, the

original separation agreement remains intact. (*Galusha* v. *Galusha,* 116 N. Y. 635.)   The decree of the Nevada Court might be modified by that court. (*Goldman* v. *Goldman,* 282 N. Y. 296.)   The Appellate Division, however, was careful not to give New York State sanction to the provision of the separation agreement as incorporated in the Reno divorce decree which yielded to each infant son the right of election as to his parental custodian.   For in this State an infant cannot contract and in most instances cannot consent to matters concerning his own interest.   We must bear in mind that there is not the slightest suggestion that either parent is not a fit and proper person to have the custody of any or all of the children.   The parents are both intelligent, cultured individuals of high respect, evincing normal reactions toward their children, including undoubtedly a naturally selfish desire for the love and companionship of their offspring.   Upon this rehearing the oldest son named Robert H. Jiranek, and the next oldest son named James H. Jiranek, reiterated their determined desire and election to remain with their father with whom they now reside, while the youngest son named Leo Jiranek, Jr., again expressed his desire to remain in the home of his mother with whom he now resides in a family consisting of his mother, her second husband, and three children of the latter.   There could seem to be no sound reason to disturb the election of any child and the best interests of all will be conserved by permitting each child to remain with the parent of his choice.

However, a more serious question arises with respect to other provisions of the separation agreement as incorporated in the Reno decree of divorce.   These provisions yield to each child the right to say whether or not he wishes to visit the parent with whom he does not reside.   In the light of the physical and legal separation of the parents, the court, uninfluenced by any personal feeling of bitterness, bias or partiality, has taken the position of a parent seeking the best interest of each child. This right of control is superior to that of the natural parent but not exclusive.   For in the determination of the best interests of the child, the natural right of the parent is an important factor.   (*Lester* v. *Lester,* 178 App. Div. 205, 223, affd. 222 N. Y. 546.)

The oldest son, Robert, and the next oldest boy, James, testified that they did not care to visit their mother.   This is perhaps actuated by their belief, true or false, that their mother, against the wishes of their father, broke up their home by obtaining a Reno divorce.   That feeling is doubtless accentuated

by the fact that she married the lawyer who has been arraigned on the side of their mother and against their father. The youngest child, Leo Jiranek, Jr., nicknamed Jerry, testified that he wanted to visit his father. This right of election of visitation has, in the light of later events, proved to be an unwise provision, for it has been the source of bitterness which is constantly increasing the strained relations between the older boys and their mother and in time will react against the father in his relationship to his youngest son.

Wisdom dictates that the court, now substituted as the parent of the children, should modify the effect of the Reno decree of divorce and delete from the separation agreement the right of election of visitation by the children, making it imperative that each son shall at the prescribed times visit the parent with whom he does not reside. The case of *Ansorge* v. *Armour* (267 N. Y. 492) definitely states that the Nevada decree cannot be changed simply because the New York State court does not agree with the Nevada decree. This is a rather unfortunate choice of words, because the New York State court might in the best interests of the child change the provisions of the separation agreement and change the effect of the Nevada decree, but the Nevada decree could only be changed by proceedings had in that State.

The rule is not laid down as to what circumstances or treatment would justify the modification of the effect of the Reno divorce. That must of necessity be left to the sound discretion of the court acting in the best interests of the child. The court cannot maintain constant control ^ the children by counsel or corporal punishment as a parent would. Nor is either parent interested in compelling the child or children with whom he or she resides to visit the other parent. Thus under the agreement we have a stalemate which is strengthened by giving to the children a freedom of election of visitation which in the past has proved so disastrous. By modifying both the separation agreement itself and the effect of the Reno decree to the extent of taking from the children the unwise freedom of election of visitation, we make imperative the visitations of each child to the parent from whom he is separated. How effective this will be must depend upon the attitude of the children toward the court's order, and the good faith of the parents in honestly seeking to comply with the terms of the separation agreement as amended by the court order. The order herein shall provide not only that each parent shall be enjoined from interfering with the visitations of the children to the other parent, but they

shall do all within their power to encourage and compel such visitations, it being understood that the two older children, Robert and James, shall visit their mother either at the Updike home when Mr. Updike and his children are not present, or at some suitable place arranged by the mother.

The stipulated agreement (fol. 608 of the printed record on appeal) provides as follows: " In the event of the remarriage of either parent, as to each Child thereafter residing with such parent, the custody shall be joint between the Husband and the Wife." Viewed from a practical standpoint there could be no joint custody in two separate families unless we divide the child or prescribe alternate months, neither of which would be in the best interest of the child. That clause must yield to the preceding one which gives to the child the right of election as to residence.

The basis of this decision is the best interest of the children. (Domestic Relations Law, § 70; *Finlay* v. *Finlay*, 240 N. Y. 429, 433.)

Order may be entered in accordance with this memorandum. Settle order on notice.