253 So.2d 435 (1971)
Clarence Levi CRANE, Petitioner,
v.
Christina Bruce HAYES, Formerly Known As Christina Bruce Crane, et al., Respondents.
No. 40832.
Supreme Court of Florida.
September 29, 1971.
*438 Joel T. Daves, III, West Palm Beach, Joseph M. Nadler and William B. Roman, Miami, for petitioner.
Hubert M. Lindsey and Rosemary Barkett, of Farish & Farish, West Palm Beach, for respondents.
ADKINS and DEKLE, Justices.
This action travels on a petition for writ of certiorari supported by a certificate of the District Court of Appeal, Fourth District, that its decision reported in 244 So.2d 544 is one which involves a question of great public interest. Fla. Const., art. V, § 4(2), F.S.A.
The question certified is:
In a habeas corpus proceeding involving child custody, does the trial court, once its jurisdiction has become final, retain continuing jurisdiction in the same proceeding to enforce and/or modify such judgment at a subsequent date?
We conclude that a trial court in a habeas corpus proceeding does not generally have continuing jurisdiction after entry of final judgment. However, for reasons explained within, the court may exercise its equitable jurisdiction after the judgment, as to the custody and care of minor children within its jurisdiction, if such subsequent jurisdiction is properly invoked and accords with due process.
Respondents appealed the final judgment in habeas corpus but the appeal was dismissed in September, 1968, and became final. The present (second) order (which is here on certiorari) emanating from the original habeas corpus proceeding, was entered a year later, based upon what was apparently considered by the trial judge as "continuing jurisdiction." The Fourth District Court of Appeal affirmed it as such. We do not find such "continuing jurisdiction" to "continue" in these circumstances although there can be jurisdiction in equity.
The undisputed facts of this litigation are complex, and reveal a succession of in-court skirmishes over custody of a minor child.
Petitioner husband and respondent wife were married in North Carolina. In 1966, respondent wife and mother, having become a resident of Palm Beach County, Florida, was granted a divorce in Martin County, Florida. Petitioner husband resided in North Carolina and did not appear personally in Florida. The couple's minor daughter was present in the jurisdiction of the court, and the court awarded custody to the mother, which it had authority to do. State ex rel. Rasco v. Rasco, 139 Fla. 349, 190 So. 510 (1939); Richter v. Harmon, 243 N.C. 373, 90 S.E.2d 744 (1956).
Shortly after the Florida divorce the mother took the one year old child to North Carolina and voluntarily delivered custody to the father at their original home. Later, the father refused to return custody of the child. The mother then invoked the jurisdiction of the North Carolina court, by petition for an order for custody of the child, pursuant to the Florida court order. It appears the action was in the nature of an equitable action for custody. The North Carolina court entered a temporary order placing custody in the mother, whereupon she left with her daughter and returned to Palm Beach County. Thereafter, the North Carolina court obtained welfare reports, heard testimony and ruled on the merits, finding the mother to be an unfit person to have custody of the child and awarding permanent custody to the father. Both parties had counsel in the North Carolina suit, although respondent mother did not return and appear at the final hearing.
Respondent mother did not obey the order of the North Carolina court. The father came to Florida and petitioned in the Palm Beach County Circuit Court for a writ of habeas corpus to obtain custody of his child by enforcement of the North Carolina *439 court order. The Florida court entered an order granting custody in the father, according full faith and credit to the North Carolina order, and specifically refraining from a determination on the merits as to the interests of the child or fitness of either parent.
Respondent mother failed to comply with the Florida court order, removing the child to Kentucky where her new husband was stationed with the United States Army. Her parents (also respondents here) had petitioned for adoption of the child with the consent of their daughter. They declined to reveal the child's whereabouts when the sheriff's deputy went to their home pursuant to writ of assistance to place custody of the child in the father who had travelled at that earlier time from Highlands, North Carolina (his home) to West Palm Beach, Florida, to receive the child pursuant to the original Florida court order. Petitioner father thereupon commenced criminal prosecution against his former wife, alleging violation of Fla. Stat. § 805.03, F.S.A., for removal of a child from the state in violation of a court order.
After three unsuccessful writs of assistance directed against her, respondent mother after a year and a half returned to Florida with the child, pleaded guilty and was placed on three years' probation conditioned on compliance with the court's child custody order. Petitioner father thereupon journeyed to Palm Beach County a second time to receive custody. The child was delivered to him in the afternoon and he immediately started the return trip to North Carolina. On the same day, respondent mother served petitioner's attorney with a paper, styled in the same manner as the habeas corpus petition previously filed by the father, seeking to modify the prior judgment as to custody and seeking a hearing on the merits as to custody.
Petitioner father's counsel objected that the court was without jurisdiction. The Circuit Court found that it had jurisdiction and thereafter conducted a hearing on the merits without the presence of the father who had immediately returned to North Carolina with the child on the same day the petition was filed. The Florida court awarded custody to the mother, finding her a fit person on the basis of conditions changed subsequent to the North Carolina order, and holding that it was in the child's best interests to be placed with its mother. Petitioner, who was not personally served and did not personally appear in the new proceeding, did not appeal this final judgment, disclaiming jurisdiction. Petitioner father did not comply with the order, and thereafter was held in contempt of court. Petitioner appealed from the contempt order, arguing that the Circuit Court was without continuing jurisdiction in a habeas corpus proceeding to conduct the hearing on the merits on petition to modify, and that he was not required to obey an order of the court which was void for lack of jurisdiction. The District Court upheld the contempt citation, concluding that the court had continuing jurisdiction in a child custody habeas corpus proceeding. The question then was certified to this Court.
Two important State interests are before this Court. One is the interest of the State in securing in every custody action the best interests of the child. The other is the need to preserve the summary nature and high priority of the habeas corpus proceeding.
As a general rule, a habeas corpus proceeding is an independent action, legal and civil in nature, designed to secure prompt determination as to the legality of restraint in some form. State ex rel. Deeb v. Fabisinski, 111 Fla. 454, 152 So. 207, 156 So. 261 (1933); State ex rel. Kopp v. Headley, 60 So.2d 734 (Fla. 1952); White v. Penton, 92 Fla. 837, 110 So. 533 (1926); Hancock v. Dupree, 100 Fla. 617, 129 So. 822 (1930). When child custody is involved, however, a habeas corpus action takes on the nature of an equitable proceeding, and the trial judge has the duty and authority to enter orders which will *440 best conserve the welfare of the child, subordinating if necessary the legal rights of the parents. Hancock v. Dupree, supra; Neal v. State ex rel. Neal, 135 So.2d 891 (Fla.App. 1st, 1961); Miller v. Miller, 38 Fla. 227, 20 So. 989, 56 Am.St.Rep. 166 (1896); Danson v. Danson, 76 Fla. 449, 80 So. 62 (1918); 11 F.L.P., Habeas Corpus, § 23. Accord, In re Marlowe, 268 N.C. 197, 150 S.E.2d 204 (1966).
There is no question but that habeas corpus is a proper proceeding to obtain custody of a child wrongfully withheld. Trotman v. Thomas, 154 Fla. 71, 16 So.2d 640 (1944). However, this does not mean that a habeas corpus proceeding involving child custody is converted into a full-dress civil action in equity. On the contrary, habeas corpus retains its form as a special proceeding of high priority and limited scope, designed to secure summary determination of rights and needs relating to restraint. Upon entry of a judgment settling the question, jurisdiction terminates, and the judgment becomes subject to timely review just as any other final judgment. Rules 1.530, 1.540, Florida Rules of Civil Procedure (1967), 31 F.S.A.; Florida Appellate Rules.
When the proceeding terminates in a final judgment, the questions decided become res judicata. The decision is entitled to full faith and credit in forums of sister states. Shenk v. Shenk, 126 So.2d 286 (Fla.App.3rd, 1961). Accord, In re Marlowe, 268 N.C. 197, 150 S.E.2d 204 (1966). An order of a court in a sister state granting temporary custody is not res judicata, and a Florida court has a duty on petition for writ of habeas corpus to determine the child's best interests. Tom v. State ex rel. Tom, 153 So.2d 334 (Fla. App.2d, 1963); Fox v. Fox, 179 So.2d 103 (Fla.App.3rd, 1965). An order by a foreign court which is without jurisdiction is not binding. See O'Neal v. O'Neal, 158 So.2d 586 (Fla.App.3rd, 1963). Accord, Richter v. Harmon, 243 N.C. 373, 90 S.E.2d 744 (1956).
An exception to the rule of res judicata and full faith and credit exists where conditions are shown to have changed subsequent to entry of the prior order or judgment. Willson v. Willson, 55 So.2d 905 (Fla. 1951). Accord, In re Marlowe, supra; Richter v. Harmon, supra. In the case at bar, the first order of the Florida court in the habeas corpus proceeding did not look to the merits of the case, but simply gave full faith and credit to the prior order of the North Carolina court. Upon petition for modification, grounded on allegations of changed conditions, the Florida court reviewed the custody issue on the merits. Florida is one of those states which adheres to the view that it will adjudicate the needs, including custody, of a minor child within its jurisdiction. See State ex rel. Rasco v. Rasco, 139 Fla. 349, 190 So. 510 (Fla. 1939).
It is argued that upon removal of the child from Florida to Kentucky, after the Florida court entered its first order awarding custody to the husband, the Florida court lost jurisdiction. This argument is grounded on the theory that the child was physically absent from the state, and also is grounded on the theory that a child's domicile is that of its parent. McMillin v. McMillin, 114 Colo. 247, 158 P.2d 444, 160 A.L.R. 396 (1945). If the child had been in valid legal custody of the mother, the child's domicile would have followed that of the mother, and upon physical absence from the state Florida's interest would have ceased. See Gafford v. Phelps, 235 N.C. 218, 69 S.E.2d 313 (1952). In this case, however, the mother's custody of the child was not valid, and the Florida court continued to have jurisdiction. Whether another tribunal could have terminated Florida's interest by taking jurisdiction is not an issue. In any event, when the child's person was returned to Florida for change of custody, the jurisdiction of the Florida court over the child was undisputed.
Treating the petition here as properly before the trial court as an equitable *441 proceeding, the father, however, was immune from service of process while in the state under the circumstances here, so that any attempted service upon him was invalid and the Florida court's attempted exercise of jurisdiction over the father and its subsequent orders directed to him were void and are of no effect and are hereby quashed.
We have expressly held that:
"It appears to be established that witnesses and suitors in attendance in court outside of the territorial jurisdiction of their residence are immune from service of process while attending court and for a reasonable time before and after going to court and in returning to their homes." (emphasis ours) Rorick v. Chancey, 130 Fla. 442, 178 So. 112 (1938).
It has been likewise so held in Lienard v. DeWitt, 153 So.2d 302 (Fla. 1963); Lawson v. Benson, 136 So.2d 353 (3d DCA, Fla. 1962); Bruner v. Robins, 191 So.2d 567 (3d DCA, Fla. 1966).
These authorities set forth an exception to this rule. The exception is where "the second suit" is incidental to the one upon which attendance was required. The "modification" sought here, however, was admittedly (and necessarily) on entirely new circumstances (as a basis for change of custody) which were not simply incidental to the original habeas corpus suit which had terminated almost a year and a half earlier, and which was on the sole legal issue of full faith and credit which was accorded to the original North Carolina judgment. The trial judge took care expressly so to state in his final judgment in the initial habeas corpus. The exception, therefore, is not applicable under these circumstances.
The father was in the Florida jurisdiction pursuant to this initial, earlier court proceeding in Florida, which granted full faith and credit to his North Carolina custody decree. His presence in Florida was for the sole (and compelled) purpose of retrieving his child pursuant to court order. It was the only way the child's mother would comply with the court order, i.e., that the father must travel to Florida and pick up the child at the court in West Palm Beach. He was in Florida, therefore, under the protection of the court in carrying out its order originally confirming custody in him. He was clearly immune from service of process in what was in effect a new proceeding as to new and changed circumstances alleged to exist as a basis for a change in custody. The testimony on this proceeded before the court in Florida while the father was back home in North Carolina with his child. A litigant cannot be "mousetrapped" into such a situation  lured by the court's process into its jurisdiction  and then bound by a judgment not founded upon valid personal service.
Since the father was immune from service of process in this new proceeding, and in fact was not personally served, he cannot be held in contempt of court or criminally charged for his failure to obey an order which the court was without jurisdiction to enter. Any order thereupon or criminal charge arising from it is void and unenforceable as to the father.
In summary, we conclude that the North Carolina court's order was valid; that the Florida court was obligated absent changed circumstances to give full faith and credit to the North Carolina judgment; and that the capability of the Florida court to exercise jurisdiction over the child continued while the child was absent in Kentucky, and, therefore, existed when the child was returned to Florida for change of custody. We also conclude that the habeas corpus proceeding, initiated on the husband's petition, terminated upon entry and enforcement of the final judgment, and that the court could not entertain an untimely petition for rehearing or modification of that final judgment.
The next question to be answered, recognizing that final judgment in habeas corpus *442 on the father's petition terminated that proceeding, is whether the mother's petition for custody of the child, grounded on changed conditions, is of no legal effect.
A petition for writ of habeas corpus is not subject to the niceties of technical pleading, and is sometimes issued upon very informal application. Chase v. State, 93 Fla. 963, 113 So. 103, 54 A.L.R. 271 (1927); Ex parte Amos, 112 So. 289, 93 Fla. 5 (1927); Martin v. State, 123 Fla. 143, 166 So. 467 (1936). An informal communication has been held to be a petition for writ of habeas corpus. Sneed v. Mayo, 66 So.2d 865 (Fla. 1953). And pleadings not styled habeas corpus have been given legal effect as such where justice and the circumstances so required. See Collins v. State, 230 So.2d 711 (Fla. App.4th 1970), appeal treated as petition for writ; Rushing v. State, 233 So.2d 137 (Fla.App.3rd, 1970); and State ex rel. Wainwright v. Holley, 234 So.2d 409 (Fla. App.2d, 1970), motions for post-conviction relief treated as petitions for writs of habeas corpus. As these cases all show, the issue of importance is whether the petitioner has shown a right to relief, in the nature of habeas corpus, and not whether the rules of pleading have been neatly observed.
In the case sub judice, the mother's petition to modify the final judgment in habeas corpus was ineffective to do so, jurisdiction having terminated after the appeal of that final judgment was dismissed. Her petition was, however, sufficient to inform the court and the parties as to the relief sought, and it was within the power of the court to grant such relief, insofar as the court had jurisdiction. Her petition for post-judgment relief, even though untimely as to the final judgment, was sufficient to merit treatment as a new petition for writ of habeas corpus, and to invoke anew the jurisdiction of the court. The court, to the extent of its jurisdiction, had an obligation to adjudicate the questions raised before it. Fox v. Fox, 179 So.2d 103 (Fla.App.3rd, 1965). Also see In re Marlowe, supra; Adams v. Gillis, 277 S.W. 724 (Ct.Civ.App.Tex., 1925); Boone v. Boone, 76 U.S.App.D.C. 399, 132 F.2d 14 (1942). The court having an obligation to protect the welfare of the child, it could take testimony and decide the merits as to such jurisdiction it may obtain, without offending the full faith and credit clause of the United States Constitution.
The last question to be answered is whether the Florida court lost jurisdiction in the second habeas corpus proceeding, the child having been removed to North Carolina where her father was domiciled, thereby becoming absent from Florida, and the mother residing in Kentucky. Ordinarily, when parents and child all are absent from the state and are domiciled elsewhere, jurisdiction would not exist. See Richter v. Harmon, supra, in which the North Carolina Supreme Court held that Florida ceased to have jurisdiction and the North Carolina courts could determine questions of changed conditions, where the child moved with its father to North Carolina and the mother moved her domicile from Florida to Maryland. The case differs significantly, however, in that when the jurisdiction of the Florida court was invoked upon the mother's last petition, she and the child were before the court; the issues were raised and litigated and it was the duty of the court under Florida law to enter final judgment in the child's best interests. This is in accord with the general rule that the authority of the court which first takes control of the subject matter of litigation continues until it has finally and completely disposed of the issues, and no court of coordinate authority is at liberty to supersede or set aside the original findings even though, in a custody case, the child might later be removed from the original jurisdiction. See Rosenberger v. Rosenberger, 68 App.D.C. 220, 95 F.2d 349 (1938), in which the Federal court held that North Carolina jurisdiction was not displaced by removal of the child to the District of Columbia, where *443 the original court retained jurisdiction. Also, see Fox v. Fox, supra; Tom v. State ex rel. Tom, 153 So.2d 334 (Fla.App.2d, 1963), as to the duty of Florida courts to enter custody orders in situations involving multi-state jurisdiction.
To the extent that the opinion of the District Court of Appeal conflicts with this decision, it is quashed.
The finding and order of contempt and the criminal charges relating thereto against the petitioner father were without jurisdiction, void and are hereby quashed.
It is so ordered.
ROBERTS, C.J., and CARLTON, J., concur.
ERVIN, J., concurs specially with opinion.
ERVIN, Justice, concurring specially:
I concur in the opinion and judgment of Justices Adkins and Dekle. I would add that the final order of contempt in the habeas corpus proceedings was in effect an equity decree. I am not too much concerned with the niceties of habeas corpus, res adjudicata, or full faith and credit in a child custody case. The welfare of the child under existing circumstances and conditions upon the hearing on the merits is the principal consideration.
The New York Court of Appeals has held that full faith and credit does not apply to child custody appeals (Bachman v. Mejias, 1 N.Y.2d 575, 154 N.Y.S.2d 903, 136 N.E.2d 866), and in a later case the United States Supreme Court declined to decide this point (Kovacs v. Brewer, 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008). Where orders to do or not to do something are modifiable on the basis of subsequent facts, as they often are (and were so found here), the courts of the state in which a prior out-of-state decree is sought to be enforced may modify the decree itself. People of State of New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133, was such a case. There, a New York court was permitted to modify a Florida custody decree awarding custody of a child to his recently divorced mother by providing visitation rights to the father. Justices Adkins and Dekle, following Florida decisions, have reached a similar result in this case.
CARLTON, J., concurs.